**FIDUCIARY FOUNDATION, LLC o/b/o Lois L. Rothfusz, Petitioner, Respondent,**

v.

**Kathy BROWN, Appellant.**

No. A12–1911.

Court of Appeals of Minnesota.

July 1, 2013.

Andrew M. Baese, Briggs & Morgan, Minneapolis, MN, for respondent.

Evon M. Spangler, Spangler and De Stefano, PLLP, St. Paul, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; SCHELLHAS, Judge; and STAUBER, Judge.

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's two-year ex parte harassment restraining

order (HRO) issued against her, arguing that the court abused its discretion by (1) not vacating the ex parte temporary harassment restraining order (THRO) and (2) issuing the ex parte HRO. Because appellant did not timely file a hearing request under Minn.Stat. § 609.748, subd. 4, we affirm the district court's denial of appellant's motion to vacate the ex parte THRO and do not reach appellant's challenge to the ex parte HRO.

## FACTS

Respondent Fiduciary Foundation, LLC (Fiduciary) petitioned on May 15, 2012, for a two-year HRO on behalf of Lois Rothfusz, its ward and conservatee, against Rothfusz's daughter, appellant Kathy Brown. Fiduciary alleged that Brown followed, pursued, or stalked Rothfusz; made uninvited visits to her; made harassing phone calls to her; broke into her residence; and took pictures of her without her permission. Fiduciary did not request a hearing on its petition. On May 15, 2012, a district court referee granted Fiduciary temporary relief in an ex parte THRO, which restrained Brown from harassing or contacting Rothfusz or visiting her residence. The ex parte THRO stated: "This Restraining Order is in effect until May 15, 2014 unless changed by a later court order. Respondent can ask the court to change or vacate the Restraining Order by filing a *Request for Hearing* within 45 days of the date of this Order." Brown did not request a hearing within 45 days after issuance of the THRO.

As to service of process of the ex parte THRO on Brown, the record includes three unserved-process certificates regarding attempted service of the ex parte THRO on Brown. The first certificate, dated May 18, 2012, states that process was "returned" because "must be served through secretary of state office." The

second certificate, dated May 29, 2012, states that the process was "returned" because of "Non Service," even though the certificate explained: "Left w/ Amber Helbling at Office of the Sec of State—Rm 180." The third certificate, dated July 10, 2012, states that the process was "returned" because "Unable to identify Resp in court." Brown does not dispute that she received a copy of the petition and order through the Minnesota Secretary of State on May 29, 2012.

On August 9, 13, and 14, 2012, Brown filed motions with the district court to vacate the ex parte HRO and sought a motion hearing, which the district court scheduled for August 29, 2012. An affidavit of service in the record reflects that, at 8:45 a.m. on August 29, Brown received service of process of: "HARASSMENT RESTRAINING ORDER, PETITION AND AFFIDAVIT, RESPONDENT INFORMATION, RESPONDENT REQUEST FOR HEARING." At the hearing on August 29, Brown's attorney informed the court that the purpose of Brown's motion to vacate was to permit Brown "to present evidence to show why this Harassment Order should not continue" because she "didn't have the opportunity to file the papers within the 45 days." But Brown conceded that she had received the THRO from the secretary of state on May 29. And Brown and her attorney made statements indicating that, while in the courthouse on July 10, 2012, for a probate hearing, Brown had attempted to request a hearing in connection with the THRO but "got scared" and left after a sheriff attempted to serve process on her attorney. Brown also later claimed that she called the courthouse on July 11 to ask about her hearing request and was told that "the 45 days had lapsed."

The district court denied Brown's motion to vacate the ex parte HRO, reasoning that Brown received personal service of the May 15 THRO on May 29, failed to timely request a hearing, and had "no reasonable excuse for failing to act timely." On October 11, Brown requested a hearing on the ex parte HRO and reconsideration of the court's order denying her motion to vacate the ex parte HRO. The district court denied her requests on October 12.

Brown subsequently noticed her appeal from the ex parte HRO, the order denying her motion to vacate the ex parte HRO, and the order denying her request for a hearing regarding the issuance of the ex parte HRO.

## ISSUES

I. Is the harassment-restraining order now in effect an ex parte THRO or an ex parte HRO?

II. Are the orders from which Brown appeals appealable orders?

III. Did the district court abuse its discretion by denying Brown's motion to vacate the ex parte HRO due to the absence of a timely request for a hearing on the ex parte THRO?

## ANALYSIS

**I. The harassment-restraining order currently in effect is an ex parte HRO.**

Minnesota Statutes section 609.748, subdivision 4(a)-(d), permits a district court referee to issue an ex parte THRO that becomes effective when signed by the referee. Section 609.748, subdivision 4(d), provides that the THRO "is in effect until a hearing is held on the issuance of a restraining order under subdivision 5. The court shall hold the hearing on the issuance of a restraining order if the petitioner

requests a hearing." Section 609.748, subdivision 4(e), provides that, "[i]f the temporary restraining order has been issued and the respondent requests a hearing, the hearing shall be scheduled." Section 609.748, subdivision 4(f), provides that "[a] request for a hearing under this subdivision must be made within 45 days after the temporary restraining order is issued." Here, Brown did not request a hearing within 45 days after the ex parte THRO was issued but now challenges the ex parte HRO. We must decide the status of an ex parte THRO issued under Minn.Stat. § 609.748, subd. 4, when a respondent does not request a hearing within 45 days after issuance of the THRO under subdivision 4(f).

■ "Statutory interpretation is a question of law [that an appellate court] review[s] de novo," and it "read[s] a statute as a whole" "to ascertain and effectuate the intent of the Legislature." *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). Section 609.748 does not expressly address the status of an ex parte THRO when no hearing is held. We conclude that, under section 609.748, subdivision 4, when no hearing is held because a respondent does not timely request a hearing, an ex parte THRO issued under subdivision 4 becomes an ex parte HRO under subdivision 5 and remains in effect for the period set forth in the ex parte THRO. Because Brown did not request a hearing within 45 days after issuance of the THRO, the ex parte THRO became an ex parte HRO by operation of law under Minn.Stat. § 609.748, subd. 4.

**II. The order denying Brown's motion to vacate the ex parte HRO is appealable.**

■ Brown appealed from the ex parte HRO, the order denying her motion to vacate the ex parte HRO, and the order

denying her request for a hearing regarding the issuance of the ex parte HRO. "[E]x parte orders are not appealable," and therefore the ex parte HRO is not appealable. *Chapman v. Dorsey,* 230 Minn. 279, 287, 41 N.W.2d 438, 443 (1950). But we conclude that the order denying Brown's motion to vacate the ex parte HRO is appealable even though "an order refusing to vacate a nonappealable order is generally not appealable." *Smith v. Illinois Cent. R.R.,* 244 Minn. 52, 54, 68 N.W.2d 638, 640 (1955). Generally, "[a]n appeal may be taken to the Court of Appeals ... from a final order ... affecting a substantial right made in a[ ] ... special proceeding." Minn. R. Civ.App. P. 103.03(g); *see Chapman,* 230 Minn. at 286, 41 N.W.2d at 442 ("[A]n order denying a motion to vacate such ex parte order is appealable if such order is a final order, affecting a substantial right, made in a special proceeding." (emphasis omitted) (quotation omitted)).

We conclude that the order denying Brown's motion to vacate the ex parte HRO is a final order affecting her substantial rights because it finally determined whether she could obtain a hearing regarding the ex parte HRO that restrains and restricts her contact with her mother for a period of two years. *See In re GlaxoSmithKline PLC,* 699 N.W.2d 749, 754 (Minn.2005) (construing rule 103.03(g), stating that "[w]e have defined a final order as one that ends the proceeding as far as the court is concerned or that 'finally determines some positive legal right of the appellant relating to the action,'" observing that prior constructions of "substantial right" had been "fact specific," citing authority for proposition that "the appellate court will rarely find an order in a special proceeding nonappealable on the ground that it does not affect a *substantial right*" (quotations omitted)).

■■■ We further conclude that the order denying Brown's motion to vacate the ex parte HRO was made in a special proceeding. Special proceedings include "any civil remedy in a court of justice which is not of itself an ordinary action" and not "incidental to an ordinary action." *Chapman,* 230 Minn. at 283, 41 N.W.2d at 440; *see also GlaxoSmithKline,* 699 N.W.2d at 756 (citing *Chapman* with approval, stating that, "[o]n occasion, we have referenced the remedial nature of a special proceeding"). A proceeding "is special, within the ordinary meaning of the term 'special proceeding,'" when "the law confers a right, and authorizes a special application to a court to enforce it." *Schuster v. Schuster,* 84 Minn. 403, 407, 87 N.W. 1014, 1015 (1901). Section 609.748 confers upon an alleged harassment victim a right to "seek a restraining order from the district court in the manner provided in this section." Minn.Stat. § 609.748, subd. 2 (2012).

We conclude that the order denying Brown's motion to vacate the ex parte HRO is appealable under Minn. R. Civ. App. P. 103.03(g) because it is a final order affecting her substantial rights and HRO proceedings constitute special proceedings under rule 103.03(g). *See Steeves v. Campbell,* 508 N.W.2d 817, 818 (Minn.App. 1993) ("Domestic abuse proceedings brought pursuant to Minn.Stat. § 518B.01 (1992) are 'special proceedings' within the meaning of Minn. R. Civ.App. P. 103.03(g)."); *see also State v. Ness,* 819 N.W.2d 219, 223 (Minn.App.2012) (stating that "HROs ... are civil orders" that "may be appealed under the Minnesota Rules of Civil Appellate Procedure," relying on and quoting rule 103.03(g)), *review granted* (Minn. Oct. 24, 2012).

■■■ Because the ex parte HRO affected the order denying Brown's motion to vacate the ex parte HRO, we conclude

that the ex parte HRO is within the scope of our review. Also, in the interests of justice, due to its materiality to the ex parte HRO and the order denying Brown's motion to vacate the ex parte HRO, we review the order denying Brown's hearing request as within the scope of our review. *See* Minn. R. Civ.App. P. 103.04 (permitting appellate court to review orders affecting order from which appeal is taken and other matters in the interests of justice).

### III. The district court did not abuse its discretion by denying Brown's motion to vacate the ex parte HRO.

"Generally, appellate courts review a district court's decision on a motion to vacate an order or judgment for an abuse of discretion." *In re Welfare of Children of M.L.A.,* 730 N.W.2d 54, 60 (Minn.App.2007); *see also In re Welfare of Children of Coats,* 633 N.W.2d 505, 510 (Minn.2001) (stating that supreme court reviews district court's decision to deny relief under Minn. R. Civ. P. 60.02 for an abuse of discretion).

An HRO may be obtained from a district court through a petition filed by the alleged victim, Minn.Stat. § 609.748, subds. 2–3 (2012), or, as in this case, by the guardian of an adult ward, *State v. Nodes,* 538 N.W.2d 158, 161 (Minn.App.1995), *review granted* (Minn. Dec. 20, 1995) *and appeal dismissed* (Minn. Feb. 9, 1996). As noted above, section 609.748, subdivision 4(a)-(d), permits a district court referee to issue an ex parte THRO that is effective upon the referee's signature. Section 609.748, subdivision 4(d), provides that the THRO "is in effect until a hearing is held on the issuance of a restraining order under subdivision 5. The court shall hold the hearing on the issuance of a restraining order if the petitioner requests a hearing." Section 609.748, subdivision 4(e), provides

that, "[i]f the temporary restraining order has been issued and the respondent requests a hearing, the hearing shall be scheduled." Section 609.748, subdivision 4(f), provides that "[a] request for a hearing under this subdivision must be made within 45 days after the temporary restraining order is issued."

Brown did not request a hearing within 45 days after the THRO. Brown urges us to construe "issued" in section 609.748, subdivision 4(f), to mean personal service on a respondent of the harassment petition and THRO-related documents. Brown further argues that the district court's denial of her untimely hearing request violated her due-process rights. Brown also argues that the district court erred by not equitably tolling the 45–day period. By failing to raise these issues in the district court, Brown waived them. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)); *see also Rubey v. Vannett,* 714 N.W.2d 417, 424 (Minn.2006) (declining to address "due process claim" because "Rubey did not raise [it] in the district court"); *Greuling v. Wells Fargo Home Mortg., Inc.,* 690 N.W.2d 757, 762 (Minn.App.2005) ("We decline to address Greuling's theory of equitable estoppel raised for the first time on appeal.").

Yet, we are concerned about a potential violation of a respondent's due-process rights, based on the statutory language in Minn.Stat. § 609.748, subd. 4(f). Under subdivision 4(f), the 45–day period within which a respondent *must* request a hearing begins to run when the THRO is issued, regardless of a respondent's receipt of service of process of the THRO. By commencing the 45–day hearing-request

period at a THRO's issuance, regardless of service of process or actual notice to a respondent affected by the THRO, the statute could deprive a respondent of the two basic requisites of due process: notice and an opportunity to be heard. *See Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 635 (Minn.2012) (stating that "the basic requisites of due process ... [are] notice and the opportunity to be heard" (quotation omitted)).

■ An appellate court "must interpret a statute as a whole to harmonize all its parts and, whenever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant." *Washek v. New Dimensions Home Health*, 828 N.W.2d 732, 737 n. 2 (Minn.2013) (quotation omitted). The legislature used the word "issued" elsewhere in section 609.748 in connection with "personally served" in a way that indicates that it did not intend that issuance would be construed as personal service. *See* Minn.Stat. § 609.748, subd. 5(c) (2012) ("An order *issued* under ... subdivision [5] must be *personally served* upon the respondent." (emphasis added)); *see also* Minn.Stat. § 609.748, subd. 3(b) (2012) (explaining when "a temporary order *issued* under subdivision 4 may be *served* on the respondent by means of a one-week published notice" (emphasis added)). Accordingly, even if Brown had not waived her argument that we should construe "issued" to mean personal service of the order, we could not construe the legislature's use of "issued" in subdivision 4(f) to mean personal service.

Brown conceded at the August 29 hearing on her request to vacate the ex parte HRO that she has a Safe at Home address. *See* Minn. R. 8290.0100 (2011) (" 'Safe at Home' is the program authorized by Minnesota Statutes, chapter 5B."); *see also* Minn.Stat. § 5B.01 (2012) (stating that chapter's purpose includes "enabl[ing]

program participants to use an address designated by the secretary of state as a substitute mailing address for all purposes"). Brown further conceded that she received the ex parte THRO on May 29 from the secretary of state after the secretary of state was served with process. *See* Minn. R. 8290.0500, subp. 3 (2011) (making "the secretary of state ... the agent for service of process" for Safe at Home program participants and, when personal service is required, permitting "document [to] be served by delivering the document to any public counter of the Office of the Secretary of State"). And the ex parte THRO informed Brown: "Respondent can ask the court to change or vacate the Restraining Order by filing a *Request for Hearing* within 45 days of *the date of this Order*." (Second emphasis added.) But Brown requested no hearing until more than 45 days after her May 29 receipt of the May 15 dated order.

Even if the 45–day hearing-request deadline did not commence until Brown personally received the ex parte THRO-related process, we conclude that the district court did not abuse its discretion by denying Brown's motion to vacate the ex parte HRO. We do not reach Brown's challenge to the ex parte HRO on the merits because we conclude that the ex parte THRO became the ex parte HRO when Brown did not timely request a hearing and that the district court did not abuse its discretion by declining to vacate the ex parte HRO in the absence of a timely hearing request.

## DECISION

The district court's order denying Brown's motion to vacate the ex parte HRO is appealable under Minn. R. Civ. App. P. 103.03(g) and the ex parte THRO and order denying Brown's hearing request are reviewable. Because Brown did

not timely request a hearing after issuance of the ex parte THRO under Minn.Stat. § 609.748, subd. 4, the ex parte THRO became an ex parte HRO under Minn.Stat. § 609.748, subd. 5, and remains in effect for the period set forth in the ex parte THRO. The district court did not abuse its discretion by declining to vacate the ex parte HRO.

**Affirmed.**